UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID ALMEIDA,                     :
            Petitioner,            :
                                   :
      v.                           :      CA 08-184 S
                                   :
ASHBELL T. WALL, Director,         :
Rhode Island Department            :
of Corrections,                    :
            Respondent.            :

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

     This is an application for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254 ("the Petition") brought by an inmate at the
Adult Correctional Institutions ("A.C.I.") in Cranston, Rhode
Island.  Petitioner David Almeida ("Petitioner" or "Almeida")
alleges that his First Amendment right to petition the government
for a redress of grievances and his Fourteenth Amendment right to
due process were violated when he was found guilty of a
disciplinary infraction and lost good time as a result.  In the
instant action he seeks expungement of the infraction from his
prison record and restoration of the good time that he lost.[1]
See Petition at 6.

     Before the Court is a motion to dismiss filed by the Rhode
Island Department of Corrections ("D.O.C.").  See Respondent's
Motion to Dismiss (Document #4) ("Motion to Dismiss" or
"Motion").  The Motion has been referred to me for preliminary

---

     [1] Petitioner alleges in his Petition that he "lost a total of 31
days good time ...."  Petition at 3; see also id., Attachment ("Att.")
1 (Facts Sheet).  However, a record from the Rhode Island Department
of Corrections ("D.O.C."), which he has attached to the Petition,
indicates that he lost 25 days of good time for the infraction at
issue.  See Petitioner's memorandum ("Petitioner's Mem."), Exhibit
("Ex.") 4 (Warden's Review Letter).

review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  I have determined that no hearing is necessary.  Because I find that Petitioner does not have a liberty interest in his good time credit under R.I. Gen. Laws § 42-56-24 (1998 Reenactment) and that his constitutional rights were not violated, I recommend that Respondent's Motion to Dismiss be granted.

## I.   Facts[2] and Travel

On February 11, 2008, Petitioner, who was confined in medium security, spoke to a Lieutenant Meunier regarding Petitioner's desire to notify other inmates and their families that the D.O.C. had failed for seven months to comply with R.I. Gen. Laws § 42-56-38.1.[3]  See Petitioner's memorandum ("Petitioner's Mem.") at 1-2.  Lieutenant Meunier informed Petitioner that he could not

---

[2] For purposes of this Report and Recommendation, the Court accepts the facts as alleged in the Petition and Petitioner's Mem. as being true.

[3] R.I. Gen. Laws § 42-56-38.1 provides:

(a) When an inmate requests and receives a list of parties approved to receive telephone calls, the inmate shall be provided the option of using either a debit or collect call system to place such calls.  Under the debit system, either the cost of such service shall be automatically deducted from the account maintained by the inmate for that purpose, or the inmate shall set aside money from his/her account to be placed in a prepaid telephone account.

(b) No telephone service provider shall charge a customer rate for calls made from a prison in excess of rates charged for comparable calls made in non-prison settings.  All rates shall reflect the lowest reasonable cost to inmates and call recipients.

(c) No concessions agreements for inmate telephone calling services shall include provisions for a commission payable to the state, nor shall any correctional institution impose a surcharge for telephone usage by inmates in addition to the charges imposed by the telephone service provider.

R.I. Gen. Laws § 42-56-38.1 (West 2008).

pass out informational literature to inform others about a class action lawsuit.  See id. at 2.

The next day, February 12, 2008, Petitioner approached Warden Stephen Boyd and Deputy Warden Kazyk, in the presence of Lieutenant Meunier, and restated his request to pass out literature regarding initiation of a class action lawsuit against the D.O.C. because of its failure to comply with § 42-56-38.1. See id.  According to Petitioner, Warden Boyd responded: "You will find yourself sitting in a cell at High side[4] if you attempt to pass anything out."  Id.  Deputy Warden Kazyk allegedly added: "And we'll be watching."  Id.  Petitioner then asked: "Can I put what you just said in a grievance?"  Id. at 2-3.  Warden Boyd replied: "I suggest you leave."  Id. at 3.

Petitioner then prepared and placed in inter-departmental mail on February 13, 2008, what he describes as two "Informal Resolutions of grievance ...."  Id.  According to Petitioner, one was "for the illegal billing and surcharges to inmates['] telephone calls ... [a]nd the other for the threat made to petitioner about being downgraded to high side."[5]  Id.  Accompanying the "Informal Resolutions of grievance" were two memoranda dated February 12, 2008, from Petitioner to Warden Boyd.  In one memorandum, Petitioner referenced their February 12th conversation and stated that he "was threatened with a down-grade to high side for requesting that I be allowed to pass out informational literature to inmates concerning R.I.G.L. 42-56-38.1 Prisoner Telephone Usage."  Petitioner's Mem., Exhibit ("Ex.") 1 at 2 (Mem. from Petitioner to Warden Boyd of 2/12/08). The memorandum continued:

_____

[4] "High side" presumably refers to the high security facility at the Adult Correctional Institutions ("A.C.I.").

[5] Copies of these documents are attached to Petitioner's Mem. See Petitioner's Mem., Exs. 1 and 1A.

I have read the entire D.O.C. policy on Disciplinary Code, and have not been able to find any listed violations that prevent[] me from informing other inmates of published laws.  It is also my understanding that I have a constitutional right to assist other inmates in their access to the courts, and no rules or threats can be used against me to prevent it.

Because the D.O.C. chooses to flagrantly violate[] the State of R.I. General Law 42-56-38.1 – Prisoner Telephone Usage, I should not be threatened in an attempt to silence me.

I will not keep quiet while the D.O.C. is in the bu[si]ness of obtaining money from my family members illegally.

Now if there is some rule I may have over looked, well then, I will appreciate it if you can explain to me, in writ[]ing, just what rule I have violated.  And I suggest you think before you threaten me again.

Sincerely yours,
David Almeida

Id., Ex. 1 at 2-3.

On February 14, 2008, Petitioner was placed in segregation for allegedly threatening Warden Boyd in the final sentence of the memorandum.  See Petitioner's Mem. at 3.  The following day the Warden charged Petitioner with making a threat, a disciplinary infraction.  See id., Ex. 2 (Offender's Report Page 01).  Petitioner remained in "pre-confinement segregation," Petition at 4, while awaiting a disciplinary hearing, see id. He alleges that he needed assistance in obtaining a copy of the D.O.C.'s Disciplinary Policy and also in obtaining research materials from medium security's law library, but that he did not see his "appointed representative," id., during this time.

The disciplinary hearing was held on February 26, 2008, before Lieutenant Meunier.  See Petitioner's Mem., Ex. 3 (Offender's Report Page 02).  During the hearing, Lieutenant Meunier noted that he had observed the February 12th conversation

4

between Petitioner and Warden Boyd and that he (Lieutenant Meunier) had also warned Petitioner on February 11, 2008, not to notify other inmates about a possible class action lawsuit. See Petition at 5. Petitioner alleges that when he "was only half way through the reading of his written statement before the board - Lt. Meunier ... inter[r]upted petitioner and made comments as to my guilt[] [a]nd stated that my statement did not matter." Petition at 5-6. Petitioner was found guilty of the infraction "based on report by warden."[6] Petitioner's Mem., Ex. 3. He appealed the finding, but his appeal was denied. See id., Ex. 4 (Warden's Review Letter).

Petitioner filed this action on May 14, 2008. See Docket. On May 19, 2008, the Court entered an order for the Attorney General to file a response to the Petition. See id. On June 2, 2008, the D.O.C., acting at the direction of the Rhode Island Attorney General, filed Respondent's Motion to Dismiss. See id.; see also Motion to Dismiss at 1 n.1. The matters were referred to this Magistrate Judge on June 17, 2008, see Docket, and thereafter taken under advisement.

## II. Law

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974). While the United States

---

[6] The "report by warden," Petitioner's Mem., Ex. 3 (Offender's Report Page 02), presumably refers to the "Infractional Narrative," id., Ex. 2 (Offender's Report Page 01), which appears on the Offender's Report:

On 2/14/08 I rec[ei]ved two letters from inmate Almeida concerning a previous conversation we had on 2/13/2008. In one of the letters inmate Almeida stated "I suggest you think before you threaten me again." I believe this statement was a threat to me and the security of this institution.

Id.

Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557, 94 S.Ct. at 2975 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance ...."); id. at 558, 94 S.Ct. at 2976 (holding that "[s]ince prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

The Court in Wolff differentiated between the revocation of good time credit versus the repeal of parole. See 418 U.S. at 561, 94 S.Ct. at 2976 ("[T]he deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored. Even if not restored, it cannot be said with certainty that the actual date of parole will be affected ....").

In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995), the Court explained that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," id. at 482, 115 S.Ct. at 2299

(discussing the involvement of federal courts in the "day-to-day management of prisons").  The Court announced that the "time has come to return to the due process principles we believe were correctly established and applied in <u>Wolff</u> ...." <u>Id.</u> at 483, 115 S.Ct. at 2300.

> Following <u>Wolff</u>, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes **atypical and significant hardship** on the inmate in relation to the ordinary incidents of prison life.

<u>Id.</u> at 483-84, 115 S.Ct. at 2300 (internal citations omitted) (bold added).  Applying the above analysis, the Court determined that the disciplinary placement of an inmate in segregated confinement for 30 days did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.  <u>See</u> <u>id.</u> at 486, 115 S.Ct. at 2301.

The United States Court of Appeals for the First Circuit has commented upon the holdings in <u>Wolff</u> and <u>Sandin</u>.  <u>See</u> <u>McGuinness v. Dubois</u>, 75 F.3d 794 (1st Cir. 1996).[7]  "In <u>Wolff v. McDonnell</u> the Court held that a state-created right to good-time credit for satisfactory behavior, forfeitable only for serious misbehavior, is a sufficient liberty interest within the Fourteenth Amendment ...."  <u>McGuinness v. Dubois</u>, 75 F.3d at 797 (internal citation omitted).  The <u>McGuinness</u> court discussed <u>Sandin</u> in a footnote.

---

[7] In <u>McGuinness v. Dubois</u>, 75 F.3d 794 (1st Cir. 1996), an inmate who had been found guilty of various prison disciplinary code violations brought a § 1983 action against the prison disciplinary hearing officer and prison superintendent, <u>see</u> <u>id.</u> at 795-96.  The Court of Appeals held, among other rulings, that the denial of the inmate's request for live testimony from other prisoner witnesses at the disciplinary hearing did not violate his right to due process "on the facts of this case ...."  <u>Id.</u> at 800.

See id. at 798 n.3 ("Sandin, however, did not retreat from Wolff's holding that, if a state statutory provision created a liberty interest *in a shortened prison sentence* which results from good-time credits, revocable only if the inmate is guilty of serious misconduct, that inmate is entitled to the procedural protections outlined in Wolff.").

The First Circuit applied Sandin in Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), stating that the new threshold test articulated in Sandin precluded a finding that the plaintiff had a liberty interest in remaining in work release status and thus barred any relief, see id. at 1160.  The court held that "[u]nder the standard announced in Sandin, we hold that plaintiff's loss of work release privileges did not affect any state-created liberty interest of his, hence did not violate the Due Process Clause."  Id. at 1161.  That court accepted the defendants' well-reasoned argument that "[i]f solitary confinement for thirty days did not, in Sandin, rise to the level of an 'atypical, significant hardship,' then surely removal from work release does not do so ...."  Id. at 1159.  The Dominique court further explained that if the loss of work release privileges were found to be an atypical restraint "we would open the door to finding an 'atypical ... restraint' whenever an inmate is moved from one situation to a significantly harsher one that is, nonetheless, a commonplace aspect of prison existence."  Id. at 1160 (alteration in original).

## III. Discussion

### A.   Liberty Interest

The D.O.C. seeks dismissal based on the Supreme Court's holding in Sandin v. Conner that the disciplinary placement of an inmate in segregated confinement for 30 days does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest, 515 U.S. at 486, 115 S.Ct.

at 2301.  <u>See</u> Memorandum in Support of Respondent's Motion to
Dismiss ("D.O.C.'s Mem.") at 2-3 (citing <u>Sandin</u>).  Given this
holding, the D.O.C. argues that "[t]he penalty imposed on
Petitioner (i.e., time to serve in the segregation unit, loss of
good time[]) is well within the expected parameters of
Petitioner's sentence."  <u>Id.</u> at 3; <u>see also</u> <u>Sandin</u>, 515 U.S. at
485, 115 S.Ct. at 2301 ("Discipline by prison officials in
response to a wide range of misconduct falls within the expected
perimeters of the sentence imposed by a court of law.").  Thus,
in the D.O.C.'s view, "Petitioner is attempting to utilize the
federal habeas statute in order to convert this Court into a
super-disciplinary board to re-hear his prison discipline."
D.O.C.'s Mem. at 3.

In response, Petitioner appears to argue that pursuant to
R.I. Gen. Laws § 42-56-24 he has a liberty interest in the good
time credit.[8]  <u>See</u> Objections and Replies to Respondent's Motion

---

[8] Section 42-56-24 was amended effective May 1, 2008.  The prior
version of the statute, which governs the instant matter, stated:

(a) The director, or his or her designee, shall keep a record
of the conduct of each prisoner, and for each month that a
prisoner who has been sentenced to imprisonment for six (6)
months or more and not under sentence to imprisonment for
life, appears by the record to have faithfully observed all
the rules and requirements of the institutions and not to have
been subjected to discipline, there shall, with the consent of
the director of the department of corrections, or his or her
designee, upon recommendation to him or her by the assistant
director of institutions/operations, be deducted from the term
or terms of sentence of that prisoner the same number of days
that there are years in the term of his or her sentence;
provided, that when the sentence is for a longer term than ten
(10) years, only ten (10) days shall be deducted for one
month's good behavior; and provided, further, that in the case
of sentences of at least six (6) months and less than one
year, one day per month shall be deducted.

(b) For the purposes of computing the number of days to be
deducted for good behavior, consecutive sentences shall be
counted as a whole sentence.

to Dismiss ("Petitioner's Reply") at 3-4.  The Court reaches this
conclusion primarily because Petitioner quotes the First
Circuit's statement in McGuinness v. Dubois, 75 F.3d 794 (1st
Cir. 1996), that "Sandin, however, did not retreat from Wolf[f]'s
holding that[,] if a state statutory provision created a liberty
interest *in a shortened prison sentence* which results from
good-time credits, revocable only if the inmate is guilty of
serious misconduct, that inmate is entitled to the procedural
protections outlined in Wolf[f]."  Petitioner's Reply at 4
(quoting McGuiness v. Dubois, 75 F.3d at 798 n.3).

To the extent that Petitioner contends that Rhode Island's
good time statute, as it existed prior to the May 1, 2008,
amendment, gave him a liberty interest protected by due process,
this Court has already considered and rejected such contention in
Raymond W. Lynch v. Walter Whitman, CA 03-162ML, slip op. at 13-
16 (D.R.I. Mar. 4, 2005)(Report and Recommendation).  As this
Magistrate Judge explained in Lynch:

---

(c) For every day a prisoner shall be shut up or otherwise
disciplined for bad conduct, as determined by the assistant
director, institutions/operations, subject to the authority of
the director, there shall be deducted one day from the time he
or she shall have gained for good conduct.

(d) The assistant director, or his or her designee, subject to
the authority of the director, shall have the power to restore
lost good conduct time in whole or in part upon a showing by
the prisoner of subsequent good behavior and disposition to
reform.

(e) For each month that a prisoner who has been sentenced to
imprisonment for six (6) months or more and not under sentence
to imprisonment for life who has faithfully engaged in
institutional industries there shall, with the consent of the
director, upon the recommendations to him or her by the
assistant director, institutions/operations, be deducted from
the term or terms of the prisoner an additional two (2) days
a month.  These two (2) days a month shall be deducted
regardless of the length of the sentence of the prisoner.

R.I. Gen. Laws § 42-56-24; Pub. L. 1991, ch. 183, § 2.

The court agrees with Petitioner that <u>Sandin</u> has not invalidated the requirements of <u>Wolff</u>. <u>Wolff</u>, as recognized by the Supreme Court in <u>Sandin</u>, remains good law. <u>See</u> <u>Sandin</u>, 515 U.S. at 483, 115 S.Ct. at 2300. However, the court disagrees that the Rhode Island good time statute is equivalent to the Nebraska statute considered in <u>Wolff</u>.

The Supreme Court attached significance to the fact that Nebraska had "provided a statutory **right to good time** [and] specifie[d] that it is to be forfeited only for serious misbehavior." <u>Wolff v. McDonnell</u>, 418 U.S. at 557, 94 S.Ct. at 2975 (bold added). The Nebraska statute, 83-1, 107, Neb. Rev. Stat. (Cum. Supp.1972), required the chief executive of a Nebraska penal facility to reduce, for parole purposes, the term of an offender for good behavior and faithful performance of duties while confined according to a prescribed schedule, <u>see</u> <u>Wolff v. McDonnell</u>, 418 U.S. at 547 n.6, 94 S.Ct. at 2970 n.6. Such reductions could be forfeited or withheld by the chief executive only after the offender had been consulted regarding the charges of misconduct. <u>See</u> <u>id.</u> Furthermore, another statute, Neb. Rev. Stat. § 83-185 (Cum. Supp. 1972), specifically limited the forfeiture or withholding of such reductions to cases of flagrant or serious misconduct, <u>see</u> <u>Wolff v. McDonnell</u>, 418 U.S. at 546-47, 94 S.Ct. at 2969-70. Thus, the statutes limited the discretion of the chief executive of the facility in three important respects. First, reductions were mandated if the offender satisfied the statutory requirement of good behavior and faithful performance of duties. <u>See</u> <u>id.</u> at 547 n.6, 94 S.Ct. at 2970 n.6. Second, reductions could only be forfeited or taken away after the offender had been consulted regarding the misconduct. <u>See</u> <u>id.</u> Third, reductions could not be forfeited or withheld except for flagrant or serious misconduct. <u>See</u> <u>id.</u>

In contrast, the Rhode Island statute pertaining to good time credit does not give such a liberty interest. Rhode Island General Laws § 42-56-24 provides that good time credit shall be deducted from a prisoner's term(s) of sentence "with the consent of the director of the department of corrections ... upon recommendation to him or her by the assistant director of institutions/

operations ....”[9]   R.I. Gen. Laws § 42-56-24(a) (1998 Reenactment).  This statute also states in relevant part that the “assistant director ... subject to the authority of the director, shall have the power to restore lost good conduct time in whole or in part upon a showing by the prisoner of subsequent good behavior and disposition to reform ....”  R.I. Gen. Laws § 42-56-24(d).  Thus, it is discretionary and not mandatory that an inmate have his good time credit restored.

The Rhode Island Supreme Court examined the Rhode Island good time statute in Barber v. Vose, 682 A.2d 908 (R.I. 1996), and stated that such recommendation and consent constitute “prerequisites to the reduction of the term of a sentence through the extension of good time credits,” 682 A.2d at 914 (quoting State v. Ouimette, 375 A.2d 209, 210 n.2 (R.I. 1977)).  Thus, unlike the Nebraska statute, the Rhode Island statute does not confer upon a prisoner “a statutory right to good time,” Wolff v. McDonnell, 418 U.S. at 557, 94 S.Ct. at 2975, but rather invests prison officials with discretionary authority to extend good time credits.[10]  Additionally,

_____

[9] The statute contains no limitation on the discretion of the director of the department of corrections to withhold “consent” or, for that matter, on the discretion of the assistant director of institutions/operations to “recommend[]” good time credit.  Cf. Kentucky Dep’t of Corrs. v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1904, 1909 (1989)(noting that “the failure of a Connecticut statute governing commutation of sentences to provide ‘particularized standards or criteria [to] guide the State’s decisionmakers,’ defeated an inmate’s claim that he had a liberty interest.”)(internal citations omitted).  Given that “a State creates a protected liberty interest by placing substantive limitations on official discretion,” id., the lack of such limitations in the Rhode Island statute is evidence that no liberty interest has been created.  See id. at 463, 101 S.Ct. at 1910 (stating requirement that “in order to create a liberty interest” the regulations at issue must “contain ‘explicitly mandatory language,’ i.e., specific directives to the decisionmaker that if the regulations’ substantive predicates are present, a particular outcome must follow”)(quoting Hewitt v. Helms, 459 U.S. [460,] 471-72, 103 S.Ct. [864,] 871-72 [(1983)]).

[10] This contrasts with the Washington state statute which the Ninth Circuit considered in Gotcher v. Wood, 66 F.3d 1097 (9th Cir. 1995), vacated by 520 U.S. 1238, 117 S.Ct. 1840 (1997), a case upon which Petitioner relies, see Petitioner’s Reply at 2, 4.  In Gotcher, the Ninth Circuit found that “[f]or purposes of our due process analysis, the scheme of the good conduct time credit system in

there is no requirement in the Rhode Island statute that the offender be consulted before the good time is deducted from that which the prisoner has accumulated. <u>See</u> R.I. Gen. Laws § 42-56-24. This is further evidence of the discretionary nature of the authority given to prison officials. Moreover, there is no limitation that good time may be forfeited only for serious or flagrant misconduct. <u>See</u> <u>id.</u> Indeed, the statute provides that "for every day a prisoner shall be shut up or otherwise disciplined for bad conduct ...," <u>id.</u>, he loses one day of good time, <u>see</u> <u>id.</u> Thus, the statute contemplates the loss of good time even if a prisoner were confined to his cell for a period as short as twenty-four hours, a mild punishment which would clearly be insufficient for serious or flagrant misconduct. In contrast, the Nebraska statute in <u>Wolff</u> specified that a reduction required that the misconduct be flagrant or serious. Although [petitioner] argues to the contrary, the due process protection given to inmates with regard to good time credit by these two statutes is very different.

This court is bound to accept the Rhode Island Supreme Court's determination on the issue of whether the R.I. Gen. Laws § 45-56-24 is discretionary in its application. <u>See</u> <u>Salemme v. Ristaino</u>, 587 F.2d 81, 87 (1st Cir. 1978)("It is well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts."); <u>see also</u> <u>United States v. Fernandez-Antonia</u>, 278 F.3d 150, 162 (2nd Cir. 2002)("It is axiomatic ... that when

---

Washington appears to be indistinguishable from Nebraska's good conduct time credit system, which the Supreme Court in <u>Wolff v. McDonnell</u> found to confer a liberty interest on inmates." <u>Gotcher v. Wood</u>, 66 F.3d at 1100 (citing <u>Wolff v. McConnell,</u> 418 U.S. at 557, 94 S.Ct. at 2975).

    It bears noting that after the Supreme Court vacated the judgment in <u>Gotcher</u> and remanded the case, the Ninth Circuit affirmed dismissal of Gotcher's civil rights action against the superintendent of the Washington State Penitentiary. <u>See</u> <u>Gotcher v. Wood</u>, 122 F.3d 39 (9th Cir. 1997). The Ninth Circuit also denied Gotcher's request to republish parts of its earlier opinion, <u>see</u> <u>id.</u>, and specifically stated "we do not reach the issue of whether Gotcher has a protected liberty interest in receiving good-time credits or remaining free of disciplinary segregation ...," <u>id.</u> Thus, the <u>Gotcher</u> opinion cited by Petitioner provides no support for his contention that he has a liberty interest in the good time credits.

> interpreting state statutes federal courts defer to state courts' interpretation of their own statutes."); <u>Puleio v. Vose</u>, 830 F.2d 1197, 1204 (1st Cir. 1987) ("interpretation of state statute by state's highest tribunal binds federal court")(citing <u>Salemme</u>); <u>Cournoyer v. Mass. Bay Transp. Auth.</u>, 744 F.2d 208, 209 (1st Cir. 1984) ("[I]t hardly need be said that the Supreme Judicial Court of Massachusetts is the 'final judicial arbiter' of the meaning of [Mass. Gen. Laws] ch. 260, § 2B.").  The Rhode Island Supreme Court has determined that the good-time sentence credit statute is discretionary in its application.  <u>See</u> <u>Leach v. Vose</u>, 689 A.2d 393, 398 (R.I. 1997)("there is no liberty interest created by our good time and industrial time credit statute since it is completely discretionary"); <u>Barber v. Vose</u>, 682 A.2d 908, 914 (R.I. 1996)("so-called good time credit for good behavior while incarcerated is not a constitutional guarantee but is instead an act of grace created by state legislation ...")(internal citation omitted).

<u>Raymond W. Lynch v. Walter Whitman</u>, slip op. at 13-16 (all alterations in original except for first and ninth).

Because § 42-56-24, as it existed prior to May 1, 2008, was discretionary in nature, Petitioner does not have a liberty interest in good time credit which is protected under the Due Process Clause.  <u>See</u> <u>Morgan v. Dretke</u>, 433 F.3d 455, 458 n.2 (5th Cir. 2005)("[I]t is the protected liberty interest in good time credits that implicates due process concerns and ... state law determines whether good time credits constitute a protected liberty interest in a given state.").  Thus, Petitioner has no liberty interest in the 31 days of good time credit for which he seeks restoration by means of the present Petition.  <u>See</u> <u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1079-80 (5th Cir. 1997)("Because the state statutes have ... vested complete discretion with the state correctional authorities on the issue of restoration of good time credits forfeited for disciplinary infractions, there is no protected liberty interest in the restoration of good time credits ....."); <u>see also</u> <u>Williams v. Wall</u>, No. 06-12S, 2006 WL

2854296, at *3 (D.R.I. Oct. 4, 2006)(finding that sanction of 21
days of punitive segregation with a loss of 21 days of good time
credit and 30 days loss of visitation privileges "fail[ed] to
come within the reach of the 'atypical' and 'significant'
benchmark which would implicate a liberty interest protected by
the Fourteenth Amendment")(quoting <u>Sandin v. Conner</u>, 515 U.S. at
484, 115 S.Ct. at 2300).

    **B.   Fair Hearing**

Petitioner also appears to argue that, apart from any
liberty interest in good time credit, the lack of a fair hearing
violates his due process rights.  Petitioner's Reply at 5 (citing
<u>Nonnette v. Small</u>, 316 F.3d 872, 878-79 (9th Cir. 2002))("a lack
of fair hearing violates due process, wholly apart from the
conditions of confinement and without regard to the <u>Sandin</u>
requirements"); <u>see also</u> <u>Burnsworth v. Gunderson</u>, 179 F.3d 771,
774-75 (9th Cir. 1999)(holding that "plaintiff's due process
rights are violated even if plaintiff has demonstrated no
cognizable liberty interest" when a prison disciplinary board
convicts him of escape after holding a hearing at which no shred
of evidence of guilt is presented).  To the extent that
Petitioner contends that his due process rights can be violated
at a disciplinary hearing even though no liberty interest is
affected by the outcome of that hearing, the Court rejects such
proposition.  <u>See</u> <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2nd Cir.
2004)(holding that prisoner "had no right to due process [at his
hearing] *unless* a liberty interest was infringed as a result")
(alteration in original)(internal quotation marks omitted); <u>see
also</u> <u>Scarpa v. Ponte</u>, 638 F.Supp. 1019, 1022 (D. Mass. 1986)("To
prove a claim for violation of due process, the Plaintiff must
first demonstrate a protected liberty or property interest and
then show that he was deprived of that interest without due
process of law.")(citing <u>Bd. of Regents v. Roth</u>, 408 U.S. 564,

571, 92 S.Ct. 2701, 2706 (1972)); cf. Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it."); id. at 461-62, 109 S.Ct. at 1908-09 ("[A]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.")(quoting Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547 (1976)).  The Ninth Circuit law cited by Petitioner, Nonnette v. Small, supra, is not binding on this Court, and this Court does not find it persuasive.

   **C.   First Amendment**

   Petitioner also argues that the imposition of discipline for making the statement in the final sentence of his memorandum to Warden Boyd violates his First Amendment rights.  See Petition at 2-3; Petitioner's Reply at 4-5.  In particular, Petitioner claims that his First Amendment right to petition the government for a redress of grievances has been violated.  See Petition at 2.

   "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large.  In the First Amendment context ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'"  Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001)(quoting Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974)).  Furthermore, "because the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems ...," id. (internal quotation marks omitted), the Supreme Court generally has "deferred to the judgments of prison

16

officials in upholding these regulations against constitutional challenge," id.

In Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987), the Court adopted a unitary, deferential standard for reviewing prisoners' constitutional claims. Shaw v. Murphy, 532 U.S. at 229, 121 S.Ct. at 1479. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. at 89, 107 S.Ct. at 2261. Under this standard, four factors are relevant in determining the reasonableness of the regulation at issue. See id. at 89-90, 107 S.Ct. at 2262. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Id. at 89, 107 S.Ct. at 2262. Second, the court must consider whether there are alternative means of exercising the right that remain open to prison inmates. See id. at 90, 107 S.Ct. at 2262. Third, the court must also consider the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally. Id. Fourth, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. Id.

The regulation at issue in the instant case prohibits threatening, harassing, or unauthorized contact with any other person (including, but not limited to, staff members, their families, victims, public officials, and law enforcement officers). See Petitioner's Mem., Ex. 2. Applying the four factors described above to the instant case, it is clear that a regulation prohibiting threats by an inmate has a valid, rational connection to the state's legitimate interest in the safe and orderly operation of its prisons. See Curry v. Hall, 839 F.Supp. 1437, 1441 (D. Or. 1993)("The government has an unmistakable

interest in preserving safety and order in the prison system."). An alternative means of exercising the right to voice complaints about conditions of confinement exists in that inmates are free to complain about conditions of confinement so long as such complaints do not contain threats or verbal abuse.  The impact of allowing inmates to file with impunity grievances which contain veiled threats or insolent language directed towards prison administrators or correctional officers would be substantial. Lastly, there is no ready alternative to the regulation.  Thus, the Court finds that the regulation at issue is valid.

To the extent that Petitioner may contend that the regulation is valid but that its application on the facts of this case resulted in the violation of his First Amendment rights, the Court rejects this argument.  A prisoner has no right to address prison officials in a disrespectful or abusive manner.  Scarpa v. Ponte, 638 F.Supp. at 1028; see also Basham v. Rubenstein, Civil Action No. 5:06-cv-00713, 2007 WL 2156589, at *2 (S.D. W. Va. July 25, 2007)(citing Scarpa); id. at *3 (finding no violation of prisoner's First Amendment rights where he was disciplined for sending insolent letter to department of corrections employee[11]); Hale v. Scott, 252 F.Supp.2d 728, 734 (C.D. Ill. 2003)(finding that "insolence regulation may be constitutionally applied to inmates' statements in grievances, provided that application passes the Turner test established by the Supreme Court").

---

[11] The letter in Basham which resulted in the discipline stated:

> No disrespect intended Beverlee [sic], but in the future, instead of attempting to circumvent departmental policy for your own benefit and corrupt ways, I would suggest and recommend that you apply and utilize some common sense and brain power.  You might find that your overall function will be a little better and you'll be able to distinguish an appeal from a grievance.

Basham v. Rubenstein, 2007 WL 2156589, at *1 (alteration in original).

Here Warden Boyd believed that Petitioner's statement, "I suggest you think before you threaten me again," was a threat to him and to the security of the institution.  See Petitioner's Mem., Ex. 2.  While it could be argued that the statement was not a threat, the Court must give deference to the Warden's evaluation of the meaning and intent of this statement.  See Beard v. Banks, 548 U.S. 521, 528, 126 S.Ct. 2572, 2578 (2006) ("[C]ourts owe substantial deference to the professional judgment of prison administrators.")(internal quotation marks omitted); Turner v. Safley, 482 U.S. at 86, 107 S.Ct. at 2260 ("[J]udgments regarding prison security are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.")(internal quotation marks omitted); United States v. Conley, 531 F.3d 56, 59 (1st Cir. 2008)("We give great deference to a prison administrator's determination that prison safety is at risk."); Gomes v. Fair, 738 F.2d 517, 524 (1st Cir. 1984)("Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Given that the Warden had warned Petitioner on February 12th that he could be transferred to high security if he attempted to pass out literature despite being told he could not, the Warden reasonably could have viewed the final sentence in Petitioner's February 12th memorandum as defiance and as a veiled threat.  See Goff v. Dailey, 991 F.2d 1437, 1438 & n.2 (8th Cir. 1993) (finding no deprivation of First Amendment right in disciplining inmate for making what superintendent interpreted as a veiled

threat[12]); <u>Scible v. Miller</u>, Civil Action No. 1:05CV166, 2007 WL
858618, at *3-7 (N.D. W. Va. Mar. 19, 2007)(finding statement in
inmate's grievance, "[t]his G-1 puts *you* on notice," to be a
threat and not protected by the First Amendment).   The statement
was clearly gratuitous with respect to the grievance expressed in
the memorandum (i.e., which requested identification of the
prison regulation prohibiting the distribution of literature).
<u>Cf.</u> <u>May v. Libby</u>, 256 Fed. Appx. 825, 828, 2007 WL 4226150, at *2
(7th Cir. 2007)(unpublished opinion)(finding that it was not
unreasonable for prison officials to view "seemingly utterly
gratuitous copy of [inmate's] letter [sent to internal affairs]
as a veiled threat"); <u>Alward v. Golder</u>, 148 P.3d 424, 427-28
(Col. Ct. App. 2006)(concluding that prisoner's First Amendment
rights were not violated by imposition of discipline for using
abusive language in his grievance which was unnecessary to
explain the facts surrounding the subject of the grievance).

Most importantly, the Warden no doubt observed the
Petitioner's demeanor and tone during the encounter on February
12th and also presumably had access to Petitioner's institutional
and criminal record.[13]   Thus, he was in a much better position

---

[12] The inmate in <u>Goff</u> told a correctional officer "that he [the
inmate] was the wrong person to be 'fucking with' ... if '[y]ou don't
think I'm the wrong person to be fucking with, I'll go back to Fort
Madison right now.'"   <u>Goff v. Dailey</u>, 991 F.2d 1437, 1438 (8th Cir.
1993)(third alteration in original)(footnote omitted).   "Fort Madison"
was a more restrictive correctional institution than the one in which
the inmate was confined at the time he made the statement at issue.
<u>See</u> <u>id.</u> at 1438 n.2.

[13] As the First Circuit has observed:

In assessing the seriousness of a threat to institutional
security prison administrators necessarily draw on more than
the specific facts surrounding a particular incident; instead,
they must consider the character of the inmates confined in
the institution, recent and longstanding relations between
prisoners and guards, prisoners *inter se*, and the like.   In
the volatile atmosphere of a prison, an inmate easily may

than this Court to make a judgment as to whether the statement
was a veiled threat.  <u>See</u> <u>Gomes v. Fair</u>, 738 F.2d at 525 ("Even
if the prison officials' evaluation of an incident is
significantly different from the court's, their view is entitled
to prevail so long as honestly held and within rational
boundaries.").

Petitioner cites <u>Bradley v. Hall</u>, 64 F.3d 1276 (9th Cir.
1995), and <u>Hinebaugh v. Wiley</u>, 137 F.Supp.2d 69 (N.D.N.Y. 2001),
in support of his claim of a First Amendment violation.
Petitioner's Mem. at 4.  In <u>Bradley</u>, the Ninth Circuit held "that
prison officials may not punish an inmate merely for using
'hostile, sexual, abusive or threatening' language in a written
grievance."[14]  <u>Bradley v. Hall</u>, 64 F.3d at 1282 (quoting prison
regulation).  The <u>Hinebaugh</u> court cited <u>Bradley</u> in declining to
dismiss a habeas corpus petition brought by an inmate who had
lost three months of good time credit for, among other things,

------

> constitute an unacceptable threat to the safety of other
> prisoners and guards even if he himself has committed no
> misconduct; rumor, reputation, and even more imponderable
> factors may suffice to spark potentially disastrous incidents.
> The judgment of prison officials in this context ... turns
> largely on "purely subjective evaluations and on predictions
> of future behavior," <u>Connecticut Board of Pardons v. Dumschat</u>,
> 452 U.S. 458, 464 [101 S.Ct. 2460, 2464, 69 L.Ed.2d 158]
> (1981) ....

<u>Gomes v. Fair</u>, 738 F.2d at 525 (quoting <u>Hewitt v. Helms</u>, 459 U.S. 460,
474, 103 S.Ct. 864, 872 (1983))(alterations in original).

[14] In <u>Bradley</u>, the inmate submitted a written grievance to a
guard's superior which stated:

> Her [the guard's] actions shows her misuse of her authority
> and her psychological disorder needs attention.  Then you
> wonder why things happen like that guard getting beat down?
> I suggest you talk to this woman and have her act profes-
> sionally instead of like a child. [sic]

<u>Bradley v. Hall</u>, 64 F.3d 1276, 1278 (9th Cir. 1995)(alterations in
original).

filing a grievance in which he alleged a prison employee "allows the law library to be run like a zoo because she is too busy masturbating and having sex with cats." Hinebaugh v. Wiley, 137 F.Supp. at 78.  Both of these decisions predate the Supreme Court's decision in Shaw v. Murphy, 532 U.S. 223, 121 S.Ct. 1475 (2001), which reversed the Ninth Circuit's determination that "inmates have a First Amendment right to assist other inmates with their legal claims," id. at 227, 121 S.Ct. at 1478 (quoting Murphy v. Shaw, 195 F.3d 1121, 1124 (9th Cir. 1999)).  The Supreme Court found that the court of appeals had erred when it "'balance[d] the importance of the prisoner's infringed right against the importance of the penological interest served by the rule,'" Shaw v. Murphy, 532 U.S. at 230 n.2, 121 S.Ct. at 1480 n.2 (quoting Murphy v. Shaw, 195 F.3d at 1127 (quoting Bradley v. Hall, 64 F.3d at 1280))(alteration in original).  This casts doubt on the continuing validity of Bradley.  See In Re Parmelee, 63 P.3d 800, 806 (Wash. Ct. App. 2003)(noting that in Shaw the Supreme Court "certainly disapproved of the Bradley balancing test" which the Ninth Circuit used in finding a violation of the inmate's First Amendment rights).

In addition, the Supreme Court found in Shaw that "[a]ugmenting First Amendment protection for inmate legal advice would undermine prison officials' ability to address the 'complex and intractable' problems of prison administration." Shaw v. Murphy, 532 U.S. at 231, 121 S.Ct. at 1480 (quoting Turner v. Safley, 482 U.S. at 84, 107 S.Ct. at 2259).  One of the problems the Court identified as potentially resulting if such augmentation were allowed was that "[t]he legal text also could be an excuse for making clearly inappropriate comments, which may be expected to circulate among prisoners, despite prison measures to screen individual inmates or officers from the remarks." Id. (internal citation and quotation marks omitted).  Implicit in

this statement is the principle that inmates do not have a First
Amendment right to make inappropriate comments in written
documents which may be expected to be circulated among inmates or
officers within a prison.  This casts further doubt on Bradley's
holding that prison officials may not punish an inmate for using
hostile, sexual, abusive, or threatening language in a written
grievance.

Moreover, there is reason to believe that the First
Circuit's view of a prisoner's First Amendment rights is not as
expansive as that expressed by the Ninth Circuit in Bradley.  See
Gomes v. Fair, 738 F.2d 517 (1984).  In Gomes, the district court
had enjoined prison officials from conducting a prison
disciplinary hearing and taking other measures against a male
inmate who had handed a number of handwritten poems, some of them
sexually explicit, to a female member of the prison staff.  See
id. at 518.  In reversing the district court's holding that the
defendants had violated the inmate's First Amendment rights, the
court of appeals explained that the lower court's analysis had
"blur[red] the difference between writing sexually explicit
poetry in prison–which the parties assume is protected by the
first amendment–and handing such poetry unsolicited to a prison
employee of the opposite sex in the context presented here."  Id.
at 527.  This certainly suggests that the First Circuit would
find the transmission of a grievance containing obscene or
offensive language to be unprotected by the First Amendment.  By
analogy, it also suggests that the First Circuit would find the
transmission of a written grievance containing a veiled threat to
be similarly unprotected speech.

In short, this Court doubts that Bradley would be followed
by the First Circuit given the Supreme Court's more recent
reiteration in Shaw that "prison officials are to remain the
primary arbiters of the problems that arise in prison

23

management," Shaw v. Murphy, 532 U.S. at 230, 121 S.Ct. at 1480, and the First Circuit's finding in Gomes that the district court erred by concluding, in effect, that an inmate's delivery of offensive written materials to a prison staff member was conduct protected by the First Amendment, Gomes v. Fair, 738 F.3d at 527. The Hinebaugh case also appears to be factually distinguishable from the instant matter in that it involved the loss of approximately three months of good time credit, Hinebaugh, 137 F.Supp.2d at 73.  Thus, to the extent that Petitioner relies upon Bradley and Hinebaugh, the Court finds such authority unpersuasive.

Having determined that neither the prison regulation nor its application to Petitioner (on the facts presented here) violate his First Amendment rights, Petitioner's claim for relief on this ground should be rejected.  I so recommend.

> **D.    Retaliation**

Petitioner argues that he is protected against retaliation by government officials for exercising his First Amendment right to seek a redress of grievances.  See Petitioner's Mem. at 3-4. To support a claim of retaliation, Petitioner must show that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Bacon v. Taylor, 414 F.Supp.2d 375, 481 (D. Del. 2006); see also Shaw v. Cowart, No. 07-14884, 2008 WL 4888479, at *4 (11th Cir. Nov. 13, 2008)(unpublished opinion)(stating that to prevail on a claim that prison official retaliated against an inmate for complaining about prison conditions, the inmate must establish: 1) that his speech was constitutionally protected; 2) that he suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and 3) that there is a

24

causal relationship between the retaliatory action and the protected speech).

As the Court has already determined that Petitioner does not have a First Amendment right to make a threat in a grievance and that the prison official could reasonably have determined that the statement in the memorandum was a veiled threat, Petitioner's claim for relief based on alleged unlawful retaliation in violation of the First Amendment should be rejected.  Cf. Adams v. Rice, 40 F.3d at 74 ("Claims of retaliation must ... be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.").  I so recommend.

**IV.   Summary**

Because R.I. Gen. Laws § 42-56-24, as it existed prior to May 1, 2008, was discretionary in nature, Petitioner does not have a liberty interest in good time credit which is protected under the Due Process Clause.  Accordingly, his claim for relief based on alleged violations of his constitutional right to due process in connection with the hearing before the disciplinary board fails.  Petitioner's claim that the discipline imposed violated his First Amendment rights should be rejected because the prison regulation at issue is not unconstitutional, and it was not unconstitutionally applied to Petitioner based on the facts of this case.  Because Defendant did not have a constitutional right to make a threat in the grievance, his claim that the discipline imposed constituted unlawful retaliation in violation of the First Amendment also should be rejected.

**V.   Conclusion**

For the reasons stated above, I recommend that the D.O.C.'s Motion to Dismiss be granted.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk

of Court within ten (10) days of its receipt.[15]   <u>See</u> Fed. R. Civ.
P. 72(b)(2); D.R.I. LR Cv 72(d).  Failure to file specific
objections in a timely manner constitutes waiver of the right to
review by the district court and of the right to appeal the
district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>,
792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford
Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
December 4, 2008

---

[15] The ten days do not include intermediate Saturdays, Sundays,
and legal holidays.  <u>See</u> Fed. R. Civ. P. 6(a).